IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 15, 2003 Session

## GREGORY LAMONT JORDAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 14898     Charles Lee, Judge**

---

**No. M2002-01300-CCA-R3-PC** - Filed February 21, 2003

---

The Defendant, Gregory Lamont Jordan, brings this appeal from the trial court's denial of post-conviction relief. The Defendant pled guilty to aggravated robbery and possession of a weapon. In this appeal, he argues that he was denied the effective assistance of counsel during the course of his plea. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

T. Lance Carter, Fayetteville, Tennessee, for the appellant, Gregory Lamont Jordan.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Mike McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 25, 2001, the Defendant entered a plea of guilty to aggravated robbery, a Class B felony, and unlawful possession of a handgun by a convicted felon, a Class E felony. The plea agreement provided that the Defendant would be sentenced as a Range II multiple offender to eighteen years for the aggravated robbery charge and two years as a Range II offender for the illegal possession of a weapon charge. The agreement mandated that the sentences run consecutively for an effective sentence of twenty years. The Defendant subsequently filed a petition for post-conviction relief. The trial court, after conducting an evidentiary hearing, denied relief. It is from the order of the trial court denying the Defendant post-conviction relief that he appeals.

A brief review of the facts outlined by the district attorney general at the plea acceptance hearing will be helpful to understanding our analysis of the Defendant's ineffective assistance of counsel claim. On February 14, 2001, Angela Hargrove was working as an employee of Cash

Express, when two masked men entered the business. One of the men held Ms. Hargrove at gunpoint while the other removed $1297 from the cash drawer. Ms. Hargrove recognized the voice of the man who took the money; she said his name was Claudale Armstrong. After taking the money, the men exited the business, and Ms. Hargrove and other witnesses observed the men get into a car that was being driven by a third man. Ms. Hargrove was able to describe the car and report a partial license tag number, as well as the direction in which the car was traveling. A telephone call was immediately made, and the description of the car was sent to nearby police officers. A police officer spotted the car while traveling in the opposite direction. As the officer turned his car around, the getaway vehicle turned down a side road. By the time the officer arrived at the side street, the vehicle had crashed, and the three persons inside were fleeing on foot. Another witness also observed the men exiting the car, and he was able to identify one of the men running away from the car as Mr. Armstrong. The police officer was able to observe the Defendant climbing a fence and observed the clothing worn by the Defendant. Other officers arrived and located the Defendant hiding in weeds a short distance from where the first officer had seen him climbing the fence. The Defendant had the same amount of cash on his person as had been taken from the Cash Express. The first police officer identified the Defendant by the clothes he was wearing. Mr. Armstrong was also apprehended shortly thereafter. The driver of the car was not immediately located, but he was later identified as Ryan Givens. Three handguns were located either on the ground or in the getaway car. The cash drawer was found in the car, as were bandanas, gloves, and toboggans, which had been purchased earlier by Mr. Givens. Mr. Givens gave two written statements implicating Mr. Armstrong, the Defendant, and himself. At the end of the prosecutor's recitation of the facts, the judge asked the Defendant whether the description was accurate, and the Defendant replied that it was.

In this appeal from the trial court's denial of his post-conviction petition, the Defendant alleges that he was denied the effective assistance of counsel while he was deciding whether to enter a guilty plea. To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-210(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.

Both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee a defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to counsel includes the right to effective counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

To determine whether counsel provided effective assistance, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936; Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). To succeed on a claim that his or her counsel was ineffective, a defendant bears the burden of showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the defendant resulting in a failure to produce a reliable result. See Strickland, 466 U.S. at 687; Burns, 6 S.W.3d at 461; Hicks, 983 S.W.2d at 245. This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The prejudice requirement is modified so that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks, 983 S.W.2d at 246.

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to criticize counsel's tactics. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Owens, 13 S.W.3d at 749. Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. See Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

The Defendant argues that his attorneys were ineffective by failing to properly investigate the State's evidence before advising the Defendant to enter into a plea agreement. Specifically, the Defendant complains that his attorneys failed to view the State's tangible evidence or speak with all of the State's witnesses. The Defendant testified at the hearing on his post-conviction petition that his attorneys, Donna Hargrove and A. Jackson Dearing, III, did not explain sentencing ranges to him and that he did not understand his plea agreement. Furthermore, the Defendant stated that his attorneys did not discuss the State's evidence or the possible testimony of the State's witnesses. According to the Defendant, his attorneys had very little contact at all with him during the course of their representation of him. He told the trial court that investigators from the Public Defender's office spoke with him briefly at the jail about the testimony of his co-defendants. He said that Ms. Hargrove came to the jail once, but he testified that she spoke to him only of family matters and did not discuss his case. From that time until the day the Defendant pled guilty, he asserted that no one from the Public Defender's office, including his attorneys, had any contact with him. On the day the Defendant pled guilty, Mr. Dearing only spent enough time with the Defendant "to go over the paper." The Defendant testified that Mr. Dearing told him that there were no defenses he could raise and that he could not help the Defendant.

Contrary to the Defendant's assertions, Ms. Hargrove and Mr. Dearing testified that they met with the Defendant several times. Although both attorneys admitted that they did not interview every witness on the State's witness list, they testified that they spoke with the police officers, the co-defendants, and the lawyers for the co-defendants. Ms. Hargrove testified that she viewed photographs of the State's physical evidence, and Mr. Dearing stated that he discussed every item of evidence with the district attorney general. Ms. Hargrove specifically testified that she felt comfortable and familiar with the Defendant's case. Ms. Hargrove also testified that she did not specifically remember whether the Defendant understood sentencing ranges and the plea agreement.

However, she stated that if he did have questions, she would have given him an explanation. Mr. Dearing testified that he did specifically remember reviewing the plea agreement with the Defendant and answering some questions the Defendant had about the legal terminology. He also said that he explained sentencing ranges to the Defendant. Both Ms. Hargrove and Mr. Dearing talked to the Defendant about the possibility of entering an open plea and having a sentencing hearing. However, the Defendant decided to take the offer made by the State because he was afraid the trial judge would be more harsh. On the points where the testimony of the Defendant and the testimony of his attorneys were contradictory, the trial court expressly credited the testimony of the attorneys, thus making a determination of the credibility of witnesses to which we give deference. See Momon, 18 S.W.3d at 156.

The crux of the Defendant's challenge is that the failure of his attorneys to investigate, specifically to interview all of the State's witnesses, precluded them from providing effective representation. However, as the trial court noted, the Defendant put forth no proof that, had his attorneys interviewed all of the State's witnesses, there is a reasonable probability that he would not have pled guilty. On the contrary, the record reflects that the Defendant was adamant about pleading guilty from the beginning of his association with his attorneys, and he apparently never reconsidered. The Defendant wrote a letter to Mr. Dearing in which he describes the testimony of his co-defendants as the most "damaging" evidence against him. He expressed his desire to enter into a plea agreement. Even after his attorneys discussed the possibility of entering an open plea, the Defendant refused because, as Ms. Hargrove testified, "He was afraid that he would get more time." Therefore, the Defendant has failed to carry his burden of proving that, even if his attorneys were deficient by not speaking with all of the State's witnesses, there is a reasonable probability that he would not have pled guilty. Because the Defendant has failed to establish the prejudice prong of Strickland's two-part test, we need not consider the allegations of deficient representation. See Strickland, 466 U.S. at 697; Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996). Accordingly, this issue is without merit.

The trial court's denial of the Defendant's petition for post-conviction relief is affirmed.

_____
DAVID H. WELLES, JUDGE